IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) | Crim. No. 07-00608 HG-02 |
| | ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| | ) ) | |
| NOLAN FERREIRA, | ) ) | |
| | ) ) | |
| Defendant. | ) ) | |
| | ) | |

**ORDER GRANTING DEFENDANT NOLAN FERREIRA'S MOTION
FOR A NEW TRIAL (DOC. 174)**

A jury convicted Defendant Nolan Ferreira of conspiracy to process with the intent to distribute over fifty grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1). The Defendant was sentenced to 100 months imprisonment and 5 years of supervised release.  It recently came to light that impeachment evidence regarding one of the Government's trial witnesses was not disclosed to the Defendant prior to trial.  After conducting an *in camera* review of the impeachment evidence, the Government was ordered to disclose the documents to the Defendant.

Defendant now moves for a new trial pursuant to Federal Rule of Criminal Procedure 33(a).  Defendant argues that the failure of the Government to disclose the impeachment evidence amounted to a constitutional violation pursuant to <u>Brady v. Maryland</u>, 373

1

U.S. 83, 86 (1963).

The failure of the Government to disclose the impeachment evidence to the Defendant prior to trial was a <u>Brady</u> violation. First, the undisclosed evidence was favorable to the Defendant because it is was evidence that could have been used to impeach a government witness.  Second, the Government failed to disclose the information to the Defendant prior to trial, despite having a constitutional duty to do so.  Third, the failure to disclose the impeachment evidence prejudiced the Defendant during trial because there is a reasonable probability that, had the evidence been disclosed, the result of the trial would have been different.

DEFENDANT'S MOTION FOR A NEW TRIAL (Doc. 174) is **GRANTED**.

## PROCEDURAL HISTORY

On November 8, 2007, the Grand Jury indicted the Defendant on two Counts related to conspiracy and the possession with the intent to distribute fifty grams or more of methamphetamine. (Indictment, Doc. 1).

On November 13, 2007, the Defendant pled not guilty to both Counts in the Indictment.  (Minutes of Hearing, November 13, 2007, (Doc. 5).)

Between June 10, 2008 and June 20, 2008 a jury trial was conducted.

On June 12, 2008, Count II of the Indictment was dismissed

with prejudice.  (Minutes, June 12, 2008 (Doc. 107).)

On June 20, 2008, the Jury returned a verdict of guilty as to Count I of the Indictment.  (Special Jury Verdict, June 20, 2008 (Doc. 120).)

On November 3, 2008, the Defendant was sentenced to 100 months imprisonment and five years of supervised release. (Minutes, November 3, 2008 (Doc. 141).)  Judgement was filed on November 10, 2008. (Judgement, November 10, 2008 (Doc. 144).)

On July 28, 2010, the Government was ordered to disclose to the Defendant two memoranda pertaining to an investigation of Special Agent Gerald Lawson, one of the Government's witnesses at trial.  (ORDER DIRECTING DISCLOSURE OF INVESTIGATION AND CERTAIN DOCUMENTS UNDER PROTECTIVE ORDER; AND PROTECTIVE ORDER, July 28, 2010 (Doc. 147).)

On June 8, 2011, the Defendant filed "DEFENDANT'S MOTION FOR A NEW TRIAL" (Doc. 174).

On August 29, 2011, the Government filed "UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR A NEW TRIAL" (Doc. 177).

On September 30, 2011, the Defendant filed "DEFENDANT'S REPLY TO THE GOVERNMENT'S MEMORANDUM IN OPPOSITION TO HIS MOTION FOR A NEW TRIAL" (Doc. 178).

Pursuant to Local Rule 7.2(d) the Court elected to decide the motion without a hearing.

**BACKGROUND**

Defendant Nolan Ferreira was arrested while attempting to sell methamphetamine to Neil Patrick Iida ("Iida") in the summer of 2005.  Following a ten-day jury trial, in which the Defendant relied on an entrapment defense, the Defendant was convicted of conspiracy to process with the intent to distribute over fifty grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1). (Judgment, June 20, 2008 (Doc. 144).)  Defendant was sentenced to 100 months imprisonment and 5 years of supervised release.  (Id.)

The Arrest

Special Agent Gerald Lawson of the Drug Enforcement Administration ("D.E.A.") arrested Iida on March 9, 2005 for possession of methamphetamine.  At that time, Iida agreed to cooperate with the D.E.A. by notifying S.A. Lawson if he came across anyone trying to sell multiple ounces of methamphetamine. In August of 2005, Iida contacted S.A. Lawson and said the Defendant was offering to sell Iida methamphetamine.

On August 18, 2005, S.A. Lawson arranged to have Iida contact the Defendant by telephone to arrange for a time to purchase the drugs at a later date.  Two phone calls were exchanged between Iida and the Defendant.  S.A. Lawson recorded the conversations.

On September 6, 2005 and September 7, 2005, Iida exchanged several phone calls with the Defendant to negotiate the exchange

4

of methamphetamine.  S.A. Lawson recorded these conversations.

On September 29, 2005, Iida contacted the Defendant to arrange for the drug exchange.  S.A. Lawson recorded the conversation.  Later that evening, S.A. Lawson and Iida met at the Waikele Shopping Center.  The plan was for Iida to meet with the Defendant to conduct the transaction.  S.A. Lawson was to follow Iida to the Defendant's residence.  After Iida and S.A. Lawson met at the Waikele Shopping Center, Iida exchanged several phone calls with the Defendant.  According to the Defendant, he did not want to go through with the drug deal.  The Defendant claims that he told Iida on at least three occasions that he did not want to go through with the drug deal and that Iida pressured him.  Iida and S.A. Lawson dispute that the Defendant expressed a desire to back out of the transaction.  Although S.A. Lawson recorded the phone conversations between Iida and the Defendant on September 29, 2005, S.A. Lawson testified that he lost the recording.  (Trial Transcript Day 3, June 13, 2008 at 68-70 (Doc. 162).)

After the phone calls, S.A. Lawson followed Iida to a townhouse complex where S.A. Lawson observed the Defendant holding a paper bag.  The Defendant was arrested.  The paper bag contained methamphetamine.  The Defendant waived his Miranda rights and agreed to cooperate.  The Defendant admitted that he had retrieved the drugs from a drug dealer, John Decano, and that

he was intending to sell the drugs to Iida.  A search of the
Defendant's home revealed an additional plastic bag of
methamphetamine on the kitchen counter.

Pre-Trial

On May 29, 2008, the Government filed a motion *in limine* to
preclude impeachment of S.A. Lawson regarding two prior instances
of alleged misconduct.  (Notice in Limine, May 29, 2008 (Doc.
79).)  Special Agent Robert Aiu of the D.E.A. had accused S.A.
Lawson of untruthfulness on two prior occasions.  The Court
reviewed four letters *in camera* related to the incidents.  The
first three letters were from the D.E.A. and report on the review
of the personnel files of S.A. Lawson for potential impeachment
evidence in connection with various criminal cases.  The fourth
letter, from Joel K. Fries of the Human Resources Division of the
D.E.A., dated February 4, 2000, is addressed to S.A. Lawson and
reports on the completed review of the Office of Professional
Responsibility's investigation finding none of his activities
warranted discipline, (Doc. 92-7).  The Court found that the
alleged misconduct did not reflect on S.A. Lawson's honesty or
integrity because the investigation of the incident concluded and
no record was placed in the S.A. Lawson's file.  (Minute Order,
June 9, 2008 (Doc. 100).)  The Court held that any probative
value of the allegations against S.A. Lawson were outweighed by
the prejudice of questioning about the incidents.

<u>The Trial</u>

The Defendant put forward a defense of entrapment.
Defendant argued that Iida, who was cooperating with the D.E.A.,
induced the Defendant to engage in the illegal possession and
distribution of methamphetamine.

During the trial, S.A. Lawson, as the designated case agent,
sat with Government counsel and testified on behalf of the
Government.  S.A. testified about the events leading up to the
Defendant's arrest and authenticated the recorded telephone calls
between the Defendant and Iida.  (<u>See</u> Trial Transcripts Day 6,
June 19, 2008 (Doc. 165); Trial Transcripts Day 7, June 20, 2008
(Doc. 166).)  The recorded conversations that took place on
September 29, 2005, however, were never entered into evidence as
S.A. Lawson testified he could not locate the recordings.  (Trial
Transcript Day 3, June 13, 2008 at 68-70 (Doc. 162).)  S.A.
Lawson and Special Agent Lawrence Peralta of the D.E.A. testified
that S.A. Lawson placed the recording into an evidence bag.  (<u>Id.</u>
at 68-70, 107-108.)  The recording, however, was never submitted
to the Non-Drug Evidence Custodian at the D.E.A.  (<u>Id.</u>)  Neither
S.A. Peralta nor S.A. Lawson could locate the recording. (<u>Id.</u>)

After a ten-day trial, the jury found the Defendant guilty
of conspiracy to possess with intent to distribute over fifty
grams of methamphetamine.  (Special Jury Verdict, June 20, 2008
(Doc. 120).)  Defendant was sentenced to 100 months imprisonment

and 5 years of supervised release.  (Judgment, June 20, 2008 (Doc. 144).)

Post-Conviction

On June 17, 2010, the Court received a letter from the United States Attorney's Office ("U.S.A.O.").  The U.S.A.O. stated that at some point following the trial, the U.S.A.O. learned that there had been an ongoing investigation into S.A. Lawson that had never been disclosed to the U.S.A.O., the Court, or the Defendant prior to trial.  The U.S.A.O. mistakenly believed S.A. Lawson had been cleared of all misconduct based on the information provided to the U.S.A.O. by the D.E.A. Office of Professional Responsibility.

The undisclosed investigation into S.A. Lawson was entirely unrelated to the incidents involving S.A. Aiu and involved allegations of serious misconduct arising from S.A. Lawson's position with the D.E.A.  Attached to the U.S.A.O.'s letter were two memoranda ("Lawson Memoranda").  (See Order Directing Disclosure of Investigation and Certain Documents under Protective Order; and Protective Order, filed July 28, 2010 (Doc. 757).)  The first memorandum, dated May 8, 2008 was addressed to Assistant Special Agent in Charge Anthony D. Willams from Group Supervisor L.H. Reichner, Jr.  (Id.)  The second memorandum, dated May 22, 2008, was addressed to S.A. Williams from Group Supervisor James Yuen. (Id.)  The Lawson Memoranda detail

allegations of misconduct by S.A. Lawson related to his position as a special agent for the D.E.A., including inappropriate relations with the subject of a criminal investigation and possible interference with an ongoing criminal investigation. After an *in camera* review of the Lawson Memoranda by the Court, the U.S.A.O. was ordered to disclose the Lawson Memoranda to the Defendant. (Id.)

In response to the disclosure of the Lawson Memoranda, the Defendant filed a motion for a new trial. Defendant argues that the Government's failure to disclose the May 2008 Lawson Memoranda amounted to a deprivation of the Defendant's constitutional rights pursuant to Brady v. Maryland, 373 U.S. 83, 86 (1963). Defendant request's a new trial pursuant to Federal Rule of Criminal Procedure 33.

## STANDARD OF REVIEW

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The defendant bears the burden of persuasion. United States v. Endicott, 869 F.2d 452, 454 (9th Cir. 1989). A motion for a new trial is granted at the discretion of the trial court. People of Guam v. Palomo, 35 F.3d 368, 372 (9th Cir. 1994). The Court's power to grant a motion for a new trial is broad. United States v. Inzunza, 638 F.3d 1006, 1026 (9th Cir.

9

2011).  The granting of a new trial, however, is an exceptional remedy and should only be allowed in "cases in which the evidence preponderates heavily against the verdict."  United States v. Pimentel, 654 F.2d 538, 545 (9th Cir. 1981).

In reviewing a motion for a new trial, a court "need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses."  United States v. Alston, 974 F.2d 1206, 1211 (9th Cir. 1992) (quoting United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980)).  The Court may draw upon the information gained from presiding over the trial.  Balestreri v. United States, 224 F.2d 915, 917 (9th Cir. 1955).  When the court determines that new evidence "preponderates sufficiently heavily against the verdict" and "that a serious miscarriage of justice may have occurred," the Court may "set aside the verdict, grant a new trial, and submit the issues for determination by another jury."  Id. at 1211-12 (internal quotations omitted).

## ANALYSIS

The Government's failure to disclose exculpatory or impeachment evidence to a criminal defendant constitutes a violation of the Due Process Clauses of the Fifth and Fourteenth Amendment to the United States Constitution.  Brady v. Maryland, 373 U.S. 83, 86 (1963).  A Brady violation constitutes sufficient grounds for a new trial pursuant to Federal Rule of Criminal

Procedure 33 when: (I) the evidence at issue was favorable to the accused because it is exculpatory or impeaching; (II) the evidence at issue was never disclosed to the defendant, either willfully or inadvertently; and (III) the accused suffered prejudice. United States v. Kaipat Pelisamen, 641 F.3d 399, 408 (9th Cir. 2011).

Undisclosed evidence is considered "collectively, not item by item." Kyles v. Whitley, 514 U.S. 419, 436 (1995). If there has been a Brady violation, "there is no need for further harmless-error review." Id. at 435. If, however, the undisclosed evidence is "'merely cumulative,' then the failure to disclose is not a violation." United States v. Kohring, 637 F.3d 895, 902 (9th Cir. 2011) (quoting Morris v. Ylst, 447 F.3d 735, 741 (9th Cir. 2006)).

I.   **THE UNDISCLOSED EVIDENCE WAS FAVORABLE TO THE DEFENDANT BECAUSE IT PERTAINED TO IMPEACHMENT OF A GOVERNMENT WITNESS**

In Brady, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. In Giglio v. United States, 405 U.S. 150 (1972), this principle was expanded to "include evidence that impeaches a witness's credibility." Kohring, 637 F.3d at 902 (citing Giglio, 405 U.S. at 154). The first element of a Brady violation examines the

11

suppressed evidence to determine whether it was favorable to the

Defendant and whether it was exculpatory or pertained to the

impeachment of a government witness.  <u>See</u> <u>Pelisamen</u>, 641 F.3d at

408.

The Lawson Memoranda bear directly on the credibly of S.A.

Lawson as a witness.  The Lawson Memoranda allege misconduct by

S.A. Lawson stemming from his authority as a special agent for

the D.E.A.  As impeachment evidence against a Government witness,

the Lawson Memoranda satisfy the first <u>Brady</u> element.  <u>Carriger</u>

<u>v. Stewart</u>, 132 F.3d 463, 479 (9th Cir. 1997) (en banc) (evidence

about the credibility of a government witness is subject to a

<u>Brady</u> analysis).

## II.  **THE GOVERNMENT HAD A DUTY TO DISCLOSE THE INFORMATION CONTAINED IN THE LAWSON MEMORANDA**

A "prosecutor has a duty to learn of any favorable evidence

known to the others acting on the government's behalf in the

case, including the police."  <u>Kyles</u>, 514 U.S. at 437.  This duty

extends to impeachment evidence favorable to the Defendant "in

the government's possession not known to the prosecutor[.]"

<u>Woods v. Sinclair</u>, 655 F.3d 886, 902 (9th Cir. 2011).

The Assistant United States Attorney ("A.U.S.A.") who

prosecuted the Defendant believed that S.A. Lawson had been

cleared of all allegations because of representations made by the

D.E.A.'s Office of Professional Responsibility.  In a <u>Brady</u>

analysis, however, a justified albeit mistaken belief by an

A.U.S.A. does not absolve the Government from its duty to disclose the information. See Strickler v. Greene, 527 U.S. 263, 288 (1999) ("[U]nder Brady an inadvertent nondisclosure has the same impact on the fairness of the proceedings as deliberate concealment."). The Government, as a whole, had a duty to disclose the information contained in the Lawson Memoranda to the Defendant prior to trial. See United States v. Blanco, 392 F.3d 382, 388 (9th Cir. 2004) (The government "may not be excused from disclosing what it does not know but could have learned.") The second element of a Brady violation is, therefore, satisfied.

**III. THE GOVERNMENT'S FAILURE TO DISCLOSE THE INFORMATION CONTAINED IN THE LAWSON MEMORANDA PREJUDICED THE DEFENDANT**

The third element of a Brady violation examines whether the defendant suffered prejudice as a result of the government's failure to disclose the favorable evidence. Kyles, 514 U.S. at 434. The Defendant is considered to have suffered prejudice if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). A "reasonable probability" may exist even when "the remaining evidence would have been sufficient to convict the defendant." Kohring, 637 F.3d at 902 (quoting Jackson v. Brown, 513 F.3d 1057, 1071 (9th Cir. 2008)). "[T]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence

he received a fair trial[.]" <u>Kyles</u>, 514 U.S. at 434.  To establish prejudice, therefore, the defendant does not need to show that he would have been acquitted had the suppressed evidence been disclosed.  <u>Silva v. Brown</u>, 416 F.3d 980, 986 (9th Cir. 2005).  The defendant suffers prejudice when the "government's evidentiary suppression 'undermines confidence in the outcome of the trial.'"  <u>Kyles</u>, 514 U.S. at 434 (quoting <u>Bagley</u>, 473 U.S. at 678).

The Defendant put forward the affirmative defense of entrapment.  As an affirmative defense, entrapment assumes the commission of an underlying crime, but absolves the wrongdoer because he was induced by the government.  <u>See</u> <u>Mathews v. United States</u>, 485 U.S. 58, 68 (1988) (Brennan, J., concurring).  The Defendant admitted to possessing methamphetamine with the intent to distribute, but argued that he was induced into the unlawful conduct by the Government.

A defense of entrapment has two elements: "government inducement of the crime and the absence of predisposition on the part of the defendant."  <u>United States v. Skarie</u>, 971 F.2d 317, 320 (9th Cir. 1992).  When the defense of entrapment is presented to a jury, the jury must determine:  "First, did government agents induce the defendant to commit the crime?  And, second, was the defendant predisposed?"  <u>United States v. Poehlman</u>, 217 F.3d 692, 697 (9th Cir. 2000).

At trial, the following instruction was given to the jury:

The government has the burden of proving beyond a
reasonable doubt that the defendant was not entrapped.
The government must prove the following:

1.    The defendant was predisposed to commit the
      crime before being contacted by the
      government agents, or
2.    The defendant was not induced by the
      government agents to commit the crime.

Where a person, independent of and before
government contact, is predisposed to commit the crime,
it is not entrapment if the government merely provides
an opportunity to commit the crime.

In determining whether the defendant was
predisposed to commit the crime before being approached
by government agents, you may consider the following:

1.    The defendant's character and reputation;
2.    Whether the government initially suggested
      criminal activity;
3.    Whether the defendant engaged in activity for
      profit;
4.    The nature of the government's inducement;
      and
5.    Any other factors related to predisposition.

Mere suggestions or the offering of an opportunity
to commit a crime is not conduct amounting to
inducement.  Inducement is government conduct that
creates a substantial risk that an otherwise law-
abiding person will commit a crime.

(Trial Transcript Day 7, June 20, 2008, at 20-21 (Doc. 166).)

The jury instructions comport with Ninth Circuit Court of Appeals

precedent.  See Skarie, 971 F.2d at 320.  Moreover, in

determining whether a defendant is predisposed to commit a crime,

the Ninth Circuit Court of Appeals has held that the most

important factor "is whether the defendant demonstrated

reluctance which was overcome by the government's inducement."
Skarie, 971 F.2d at 320.

At issue here, is whether the Government's failure to
disclose the information contained in the Lawson Memoranda
materially prejudiced the ability of the Defendant to put forward
an entrapment defense.  The focus of this inquiry centers on the
role S.A. Lawson played in the Government's prosecution of the
Defendant.  See, e.g., Williams v. United States, 500 F.2d 105,
107 (9th Cir. 1974).

The Defendant argues the credibility of S.A. Lawson's
testimony as a federal agent played an integral role in
establishing that the Defendant was predisposed to engage in drug
trafficking.  The Defendant specifically focuses on the
reluctance factor.  The Defendant claims that the Defendant
attempted to back out of the deal on September 29, 2005, but that
Iida pressured him to go through with it.  The Defendant states
that Iida told the Defendant that if he did not go through with
the deal, Iida would look bad to the Defendant's sellers.  The
Defendant also stated that Iida promised the Defendant he would
make substantial profit through the deal.

At trial, Iida testified that he did not pressure the
Defendant to go through with the drug transaction.  (Trial
Transcripts Day 2, June 12, 2008 at 88 (Doc. 161).)  Iida
testified he could not state for sure, however, whether the

16

Defendant expressed a reluctance to go through with the
transaction on September 29, 2005. (Trial Transcripts Day 6,
June 19, 2008 at 34 (Doc. 165).)  S.A. Lawson testified that he
overheard and recorded the conversations between the Defendant
and Iida on September 29, 2005. (Trial Transcript Day 3, June
13, 2008 (Doc. 162).)  S.A. Lawson stated that Iida never
pressured the Defendant to go through with the deal. (<u>Id.</u> at 12-
14.)  S.A. Lawson also testified that the Defendant never
attempted to back out of the deal. (<u>Id.</u>)  S.A. Lawson admitted
that he failed to submit the September 29, 2005 phone recordings
to the Non-Drug Evidence Custodian at the D.E.A. (Trial
Transcript Day 3, June 13, 2008 at 68-70 (Doc. 162).)  Since S.A.
Lawson could not find the recording, his testimony provided the
only corroboration to Iida's testimony regarding what was said on
phone on September 29, 2005.

The Defendant argues that if S.A. Lawson's credibility had
been impeached by cross-examining S.A. Lawson on the information
contained in the Lawson Memoranda, the Defendant could have
argued to the jury that the government failed to meet its burden.
Defendant could have argued, for example, that S.A. Lawson
destroyed the September 29, 2005 recording to cover-up
exculpatory evidence or that Iida and S.A. Lawson were lying
about what the Defendant said.  Defendant argues that his
inability to impeach S.A. Lawson using the information contained

in the Lawson Memoranda materially prejudiced the Defendant's ability to mount an entrapment defense.

The case of <u>Williams v. United States</u>, 500 F.2d 105 (9th Cir. 1974) is instructive. In <u>Williams</u>, the defendant had been convicted for trafficking heroin. <u>Id.</u> at 107. The Ninth Circuit Court of Appeals, however, vacated the verdict and granted the defendant a new trial after new evidence emerged impugning the "integrity and credibility" of a testifying federal agent. <u>Id.</u> at 108. In <u>Williams</u>, a federal agent, who corroborated the testimony of a confidential informant regarding a drug deal, was indicted and charged with perjury after the defendant's conviction. <u>Id.</u> at 107. The perjury charge was unrelated to the defendant's trial. The <u>Williams</u> Court, however, examined the evidence and concluded the federal agent's testimony was tainted. <u>Id.</u> The <u>Williams</u> Court held that since the federal agent's testimony was the only testimony to corroborate the confidential informant's account of the drug transaction, "the jury might not have been convinced that there was enough evidence to find Williams guilty beyond a reasonable doubt." <u>Id.</u> at 108. "A conviction based substantially upon tainted evidence cannot stand." <u>Id.</u> (citing <u>Mesarosh v. United States</u>, 352 U.S. 1, 14 (1956)).

Here, as in <u>Williams</u>, S.A. Lawson's credibility and integrity were impugned by the allegations detailed in the Lawson

18

Memoranda.  The credibility of S.A. Lawson was never attacked
during trial, however, because the Defendant did not have access
to the information in the Lawson Memoranda.[1]

Similar to that of the federal agent in Williams, S.A.
Lawson played an important role during the Defendant's trial.
S.A. Lawson sat at counsel table.  He was the designated case
agent for the D.E.A.  He was the agent in-charge of running the
operation that led to the Defendant's arrest.  He was responsible
for misplacing the September 29, 2005 tape recordings.  He also
provided the only testimony corroborating Iida's account of the
conversations that transpired on September 29, 2005.  S.A.
Lawson's credibility as an agent for the D.E.A. was, therefore,
central to the prosecution's case.

The fact that S.A. Lawson was allegedly engaging in serious
misconduct related to his position as a special agent for the
D.E.A. and that the Defendant never had an opportunity to cross-
examine S.A. Lawson on these credibility issues, undermines
confidence in the trial.  If the Defendant had been able to
substantially impeach S.A. Lawson, it may have cast doubt on the
legitimacy of the entire operation.  The Ninth Circuit Court of
Appeals has long held that "evidence is material if it might have
been used to impeach a government witness, because if disclosed

---

[1]During S.A. Lawson's testimony, the Defendant blurted out,
"You're lying, dude."  (Trial Transcript Day 3, June 13, 2008, at
9.)  The Court immediately struck the statement as improper.

and used effectively, it may make the difference between conviction and acquittal." Carriger, 132 F.3d at 481. Moreover, if the Defendant had been given information about S.A. Lawson's misconduct, the Defendant may have used an entirely different trial strategy in putting forward an entrapment defense. See Tennison v. City & Cnty of San Francisco, 570 F.3d 1078, 1091 (9th Cir. 2009) ("Defense counsel is entitled to plan his trial strategy on the basis of full disclosure by the government[.]" (quoting United States v. Howell, 231 F.3d 615, 625 (9th Cir. 2000)).

The Government argues that the Lawson Memoranda would not have been admissible for impeachment purposes and, therefore, cannot be considered "material" pursuant to Brady. See United States v. Kennedy, 890 F.2d 1056, 1059 (9th Cir. 1989). The Government states that the Lawson Memoranda would be improper character evidence pursuant to Federal Rule of Evidence 608(b) because it would be extrinsic evidence of prior bad acts being used for impeachment purposes. See Fed. R. Evid. 608(b); United States v. Bosley, 615 F.2d 1274, 1277 (9th Cir. 1980). The Government is correct insofar as Federal Rule of Evidence 608(b) forbids the use of extrinsic evidence to prove a prior bad act for impeachment purposes. Fed. R. Evid. 608(b). The Lawson Memoranda, however, could have been used to cross-examine S.A. Lawson based on the information contained in the documents, not

on their admission into evidence. Paradis v. Arave, 240 F.3d 1169, 1179 (9th Cir. 2001) ("Evidence can be 'used to impeach' a witness even if the evidence is not itself admissible, even to impeach.").

Rule 608(b) allows a party to cross-examine on specific bad acts involving dishonesty. Fed. R. Evid. 608(b). Here, the Defendant would have been allowed to ask S.A. Lawson questions regarding his alleged misconduct. If S.A. Lawson denied the allegations, then the Defendant would have been able to call the author of the Lawson Memoranda to testify about S.A. Lawson's inconsistent statements. See Paradis, 240 F.3d at 1179. While the Lawson Memoranda would have never been entered into evidence, the disclosure of the information contained in the documents would have given the Defendant an opportunity impugn S.A. Lawson's credibility. "[E]vidence is material if it could have been used to impeach a key prosecution witness sufficiently to undermine confidence in the verdict[.]" Id. Through cross-examination and rebuttal witnesses, the Defendant may have been able to undermine one of the Government's key witnesses.

The Government, therefore, had an obligation to disclose the information contained in the Lawson Memoranda to the Defendant prior to trial. United States v. Price, 566 F.3d 900, 912 (9th Cir. 2009) ("Where the prosecution possesses or knows of material favorable to the defendant that would be admissible subject to

the court's discretion <u>Brady</u> requires that such material be
turned over to the defense"); <u>United States v. Van Brandy</u>, 726
F.2d 548, 552 (9th Cir. 1984) ("[W]here doubt exists as to the
usefulness of evidence, [the prosecutor] should resolve such
doubts in favor of full disclosure . . .").

In light of the important role that S.A. Lawson played in
the Defendant's prosecution and the nature of the information
contained in the Lawson Memoranda, it is clear that the Defendant
was prejudiced by not being able to impeach S.A. Lawson with the
information contained in the Lawson Memoranda.  The failure of
the Government to disclose the information contained in the
Lawson Memoranda undermines the confidence of the Defendant's
trial.  The third element of a <u>Brady</u> violation is, therefore,
satisfied.

## CONCLUSION

The Government's failure to disclose the on going
investigation in S.A. Lawson's activities as an agent for the
D.E.A. constituted a <u>Brady</u> violation.  Pursuant to Federal Rule
of Criminal Procedure 33, the Defendant is entitled to a new
trial.  Defendant's "MOTION FOR A NEW TRIAL" is **GRANTED.**

IT IS SO ORDERED

DATED: November 30, 2011, Honolulu, Hawaii.



           /S/ Helen Gillmor
_____
Helen Gillmor
Senior United States District Judge

United States v. Nolan Ferreira, Crim. No. 07-00608 HG; **ORDER GRANTING DEFENDANT NOLAN FERREIRA'S MOTION FOR A NEW TRIAL (DOC. 174).**